Patrick L. FITZGERALD,
Appellant–Defendant,

v.

STATE of Indiana, Appellee.

No. 28A01–0306–CR–199.

Court of Appeals of Indiana.

April 6, 2004.

Susan K. Carpenter, Public Defender of Indiana, J. Michael Sauer, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Nicole M. Schuster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge.

Following a jury trial, Patrick Fitzgerald was found guilty of Sexual Misconduct With a Minor, a Class B felony.[1] He

---

1. Ind.Code § 35–42–4–9 (Burns Code Ed. Supp.2003).

presents three issues for our review, all of which are related to sentencing:

I. Whether the trial court erred in its assessment of aggravating and mitigating factors;

II. Whether the sentence is inappropriate; and

III. Whether some imposed conditions of probation are unconstitutional.

We affirm in part, reverse in part, and remand.

Fitzgerald had known A.V. for her entire life. He was a friend of her father. Over the years, A.V. would accompany her father when he would visit Fitzgerald and other friends at Fitzgerald's place of employment and at the volunteer fire department where Fitzgerald was the Assistant Chief. During the summer of 2000, A.V., who was fourteen years old and a freshman in high school, moved into her father's home on a full-time basis.[2] Over time, Fitzgerald and A.V. began to talk frequently and a "romantic relationship" started in September of 2000. Over the next year, the relationship became sexual and A.V. and Fitzgerald would have sex on a weekly basis. Because A.V.'s father was a truck driver who left for work between 3 and 5 a.m., A.V. and Fitzgerald were able to hide their relationship.[3] Nonetheless, A.V.'s father became suspicious of A.V. and Fitzgerald and confronted them. They both denied that there was any sort of relationship between them.

In September or October of 2001, A.V. became pregnant. She told only Fitzgerald, and she did not seek medical care. It was not until April 2002, when a school guidance counselor asked A.V. if she was pregnant, that she informed anyone other than Fitzgerald of her pregnancy. At that time, she sought medical care and delivered a baby girl on June 12, 2002. As a consequence, Fitzgerald was charged with the present offense and was convicted.

The trial court sentenced Fitzgerald to ten years in the Department of Correction, and suspended three years of the sentence on the grounds that Fitzgerald commit no violation of law and that he be placed on supervised probation until April 3, 2013. In entering its sentencing order, the trial court identified several aggravating and mitigating circumstances and determined that they balanced, making the presumptive sentence appropriate. The trial court also stated that any sentence less than ten years would depreciate the serious of the crime.

I

*Aggravating and Mitigating Factors*

Fitzgerald contends that the trial court erred in relying upon two aggravating circumstances in sentencing. Specifically, Fitzgerald challenges the following findings:

"1. There is a risk that this offense may be repeated. Defendant has made clear repeatedly that he disagreed with the law, and that he has no regret in his actions. The Defendant has stated repeatedly that he knew the crime was wrong, but he continued to repeat it.

* * *

5. The victim now has an infant for whom she is responsible. The Defen-

---

2. A.V.'s parents were divorced. Before she moved into her father's home during the summer of 2000, she had lived with her mother. After moving in with her father, A.V. saw Fitzgerald on a more frequent basis, "[a]bout every other day." Transcript at 154.

3. Fitzgerald lived just a few blocks from A.V.'s home, and she would stop by his home on her way to school.

dant's actions have caused her to incur child care obligations that may have impeded opportunities or goals that young women may pursue." Appendix at 164–65.

Fitzgerald further contends that the trial court abused its discretion by failing to find the statutory mitigating circumstance that this offense was the result of circumstances unlikely to recur. *See* Ind.Code § 35–38–1–7.1(c)(2) (Burns Code Ed. Supp. 2003).

■ Sentencing decisions lie within the discretion of the trial court. *Jackson v. State*, 728 N.E.2d 147, 154 (Ind.2000). When a trial court imposes a presumptive sentence, we presume that the trial court considered the proper factors in making the sentencing determination. *Id.* However, when a court identifies aggravating or mitigating circumstances, it is obligated to include a statement of its reasons for selecting the sentence imposed. *Id.* The statement of reasons must contain three elements: (1) identification of all significant aggravating and mitigating circumstances; (2) the specific facts and reasons that lead the court to find the existence of each such circumstance; and (3) reflection of an evaluation and balancing of the mitigating and aggravating circumstances in fixing the sentence. *Id.* The trial court is responsible for determining the appropriate weight to give aggravating and mitigating circumstances. *Powell v. State*, 751 N.E.2d 311, 315 (Ind.Ct.App.2001).

■ A trial court is not obligated to find a circumstance to be mitigating simply because it is offered by a defendant as a mitigating circumstance. *Highbaugh v. State*, 773 N.E.2d 247, 252 (Ind.2002). Additionally, a trial court is not obligated to weigh or credit the mitigating factor the same as the defendant requests. *Id.* Upon appeal, a defendant must show that the proffered mitigating circumstance is both significant and clearly supported by the record. *Id.*

■ Fitzgerald's claim regarding the aggravator that Fitzgerald's actions caused A.V. to incur child care obligations that may have impeded opportunities or goals that young women may pursue is persuasive. In its oral sentencing statement, the trial court stated, "I don't know what goals she may have set for herself, but for what occurred here I don't know what her plans might have been. I don't know how much easier if at all it might have been, but now she has to think not only of herself but a very small child. For someone of such tender age the Court can only conclude that that is a factor that I have to consider an aggravation." Tr. at 325–26. A.V. testified that her goal was to become a firefighter and that she planned to accomplish that goal by attending school at V.U.[4] In her victim impact statement included in the pre-sentence investigation report, she denied having any adverse effects due to the offense committed by Fitzgerald.

The State argues that the trial court was entitled to not give much credit to A.V.'s statement because of her age and the belief that she may not understand the true costs and rewards of having a child. While it may be true that A.V. has not fully experienced the difficulties that are inherent with raising a child, there is no indication from the evidence that having a child has negatively impacted A.V.'s ability to pursue her goals. Further, A.V.'s testimony indicates that she will be able to accomplish her goals. Consequently, the

4. We presume that A.V. was referring to Vincennes University which is in the county adjoining Greene County.

aggravating circumstance that the offense may have impeded A.V.'s ability to pursue her goals is not supported by the evidence.

■ Turning to the other aggravating circumstance challenged, that there is a risk that Fitzgerald would repeat the offense, we begin by noting the trial court's reasoning for why it believed that the offense could recur. That is that Fitzgerald repeatedly made clear that he disagreed with the law, that he had no regret for his actions, and that he knew the crime was wrong but continued to repeat it. In our review of the record, we have not located any statements in which Fitzgerald "made clear ... that he disagreed with the law." Rather, Fitzgerald's statements indicate at best that he had a complete disregard for the law which he violated, given that he knew his actions were wrong but continued to engage in sexual intercourse with a minor.[5]

To the extent, however, that the trial court was fearful that the instant offense would likely recur with A.V. it was erroneous because as noted by Fitzgerald, at the time of sentencing, she was over the age of 16 and no longer the subject of the provisions of the sexual misconduct statute.[6]

■ Be that as it may, the trial court found three additional aggravating circumstances. The court noted that the offense was not an isolated incident but was continual over the course of a year. In addition the court noted that Fitzgerald did not provide or facilitate any pre-natal care for A.V. until seven months into the pregnancy and that while on bond, Fitzgerald had violated a no contact order.

As a mitigating circumstance, Fitzgerald has offered his view that the crime was the result of unusual circumstances and was, therefore, unlikely to recur. This is but a refinement of the argument that the court erred in concluding that the events were likely to recur. The court was not required to find that circumstance as a mitigating factor.

Even were we to agree that two of the five stated aggravators were inappropriate for consideration, the court was entitled to balance the remaining three aggravating circumstances against the two conceded mitigators, i.e. the lack of a criminal record and Fitzgerald's service as a volunteer firefighter. In this light, reversal of the presumptive sentence is not required.

The posture of the case does not suggest that the trial court, if disregarding the two questionable aggravators, would have imposed less than the presumptive sentence. To the contrary, the court specifically stated that to impose less than the presump-

---

5. In response to the question of whether Fitzgerald would admit that the relationship was wrong, Fitzgerald stated, "It might have been a mistake. I know I shouldn't have done it, but I didn't mean to fall in love with her." Tr. at 228. Later, during cross-examination, Fitzgerald testified, "And if falling in love with somebody and loving somebody is a crime then I guess I'm guilty, but I can't change that." Tr. at 243. These statements accurately characterize the statements made by Fitzgerald about his relationship with A.V. and his regard for the law, or lack thereof.

6. Fitzgerald directs our attention to the fact that A.V. is no longer a minor for purpose of the sexual misconduct statute. Therefore, he correctly notes that he could not commit the crime again · with her. Further, he alleges that there is no indication that he would engage in such activity with other minors. While it is true that there has been no other incidents involving other minors of which the trial court was aware, the trial court evidently was concerned that it could occur again because Fitzgerald admittedly had no control over himself during the relationship. Were the factual circumstances to present themselves in a new setting, we cannot say that as a matter of law the trial court's concern was totally without justification.

tive sentence would depreciate the seriousness of the offense committed.

We therefore conclude that the court's consideration and balancing of aggravating and mitigating circumstances does not dictate reversal of the presumptive sentence.

## II

### Inappropriate Sentence

In a somewhat related argument, Fitzgerald also asserts that his sentence is inappropriate in light of his character and the nature of his offense. To support his claim that the sentence is inappropriate, he relies upon his view that the offense was unlikely to recur because of the unusual circumstances out of which it arose. As stated above, the court was not required to regard this as a proper mitigating circumstance in this case. Fitzgerald also relies upon the fact that at the time he was sentenced, he was a forty-one year old man with no criminal record. Additionally, he requests that we apply minimal weight to the aggravating circumstance that he violated a no contact order by visiting A.V. and his child while out on bail.

A sentence which is authorized by statute will not be revised unless it is inappropriate in light of the nature of the offense and the character of the offender. *Kien v. State*, 782 N.E.2d 398, 416 (Ind.Ct. App.2003), *trans. denied.* When considering the appropriateness of the sentence, courts should initially focus upon the presumptive sentence. *Id.* Trial courts may then consider deviating from the presumptive sentence based upon a balancing of the factors which must be considered pursuant to I.C. § 35–38–1–7.1(a) together with any discretionary aggravating and mitigating factors to be found. *Id.*

In this case, the trial court sentenced Fitzgerald to the presumptive term established by our legislature. After reviewing the relevant aggravating and mitigating circumstances, the trial court concluded that the presumptive sentence was appropriate. We agree. It is true that Fitzgerald's lack of criminal history is due considerable mitigating weight. *See Cloum v. State*, 779 N.E.2d 84, 91 (Ind.Ct.App.2002) (stating that age is highly relevant in determining weight to be given to lack of criminal history). However, there were at least three valid aggravating factors to be balanced against Fitzgerald's lack of criminal history and his service as a firefighter. Given that fact, and that Fitzgerald's character shows a disregard for the law by his long continuance of a sexual relationship which he knew was illegal and violating a no contact order when released on bail, we cannot conclude that a sentence equal to the presumptive is inappropriate.

## III

### Conditions of Probation

Fitzgerald also challenges several conditions which were imposed for his probation. Specifically, he challenges the following provision from the Order of Probation, "You shall waive your right against *unreasonable* searches by the Probation Officer or anyone acting on behalf of the Probation Officer for the purpose of insuring compliance with your conditions of probation." Appendix at 156 (emphasis supplied). Fitzgerald asserts that he cannot constitutionally be compelled to waive his right against unreasonable searches.

A trial court has broad discretion to impose conditions of probation which will aid in the furtherance of the goals of assuring that the probation serves as a period of genuine rehabilitation and that the community is not harmed by a probationer being at large. *Carswell v. State*, 721 N.E.2d 1255, 1258 (Ind.Ct.App. 1999). These conditions may impinge

upon the probationer's exercise of an otherwise constitutionally protected right. *Purdy v. State*, 708 N.E.2d 20, 22 (Ind.Ct. App.1999). However, probationers are entitled to some limited protection of their privacy interests. *Id.* at 23. A probationer's home is protected by the Fourth Amendment's requirement that a search be reasonable. *Griffin v. Wisconsin*, 483 U.S. 868, 873, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987); *Carswell*, 721 N.E.2d at 1260; *Purdy*, 708 N.E.2d at 23. Similarly, our state constitutional analysis is based upon the reasonableness of the official behavior in conducting a warrantless search. *Purdy*, 708 N.E.2d at 23. When a defendant contends that a probation condition is unduly intrusive on a constitutional right, the following factors must be balanced: (1) the purpose sought to be served by probation; (2) the extent to which constitutional rights enjoyed by law abiding citizens should be afforded to probationers; and (3) the legitimate needs of law enforcement. *Carswell*, 721 N.E.2d at 1258. Moreover, to determine the validity of a search condition, the court must establish whether the condition as written is so broad as to be facially invalid. *Bonner v. State*, 776 N.E.2d 1244, 1247 (Ind.Ct.App.2002), *trans. denied.* If the condition is not facially invalid, then we must determine whether the imposition of the search condition is reasonably related to the defendant's rehabilitation and the protection of the public. *Id.* at 1247–48.

To support his argument that the condition is overbroad, Fitzgerald relies upon several cases in which this court and the United States Supreme Court have conclusively stated that the search of a probationer's home must be conducted in compliance with the reasonableness requirement of the Fourth Amendment. The difference between the probation condition in those cases and the probation condition at issue here is that the present condition would have Fitzgerald waive his right to *unreasonable* searches, whereas the probation conditions in those other cases made no mention of whether the searches must be reasonable or unreasonable. In each case, the court held that a reasonableness requirement was inherently included within the provision, even though not explicitly contained. *See, e.g., Carswell*, 721 N.E.2d at 1262.

In essence, the State has asked that we apply similar logic to the provision at issue in this case and determine that the condition survives because "reasonableness is inherent in the test of the probation condition." Appellee's Brief at 11. To support this argument, the State relies upon the language in the provision which states that a search may be conducted by "the Probation Officer or anyone acting on behalf of the Probation Office for the purpose of insuring compliance with your conditions of probation." App. at 156. In effect, the State is asserting that any search conducted by a Probation Department for purposes of probation compliance is automatically cloaked with reasonableness. Such is not the case.

■ We hold that at a minimum, there must be a reasonable suspicion that the conditions of probation are being violated in order for a probation search to be reasonable. In this regard, a general or routine sweep for probation compliance checks, as was the case in *Bonner* and in *Purdy, supra,* will not suffice.

As a result, we cannot conclude, as we did in *Bonner, Carswell,* and *Purdy,* that the provision is valid due to the inherent reasonableness requirement. Rather, this provision is invalid because it explicitly attempts to allow Probation Officers to perform *unreasonable* searches, even though it has repeatedly been stated that probationers enjoy a constitutionally pro-

tected right against such. Consequently, the trial court is ordered to revise the probation condition to reflect that any such search must be reasonable in light of this discussion.

■ From the Special Probation Conditions for Adult Sex Offenders, Fitzgerald asserts error in the following provisions:

"5. You shall not possess or view any pornographic or sexually explicit materials, including but not limited to: videos, television programs, DVD's, CD's, magazines, books, Internet web sites, games, sexual devices or aids, or any material which depicts partial or complete nudity or sexually explicit language or any other materials related to illegal or deviant interests or behaviors....

\* \* \*

14. You shall not be present at parks, schools, playgrounds, day care, or ——————— (other specific locations where children are known to congregate in your community)." App. at 157–59. In challenging condition 5, Fitzgerald argues that the terms "pornographic or sexually explicit materials" and "deviant interests or behaviors" are unconstitutionally vague. In doing so he presupposes that a violation of the condition does not occur unless the possession or viewing of pornographic or sexually explicit materials or any material depicting partial or complete nudity or sexually explicit language is related to illegal or deviant interests or behaviors. We will consider Fitzgerald's contention in this context.[7]

To support his claim, he relies upon this court's decision in *Smith v. State*, 779 N.E.2d 111 (Ind.Ct.App.2002), *trans. denied*. In *Smith*, this court determined that the probation condition restricting possession of pornographic or sexually explicit materials was unreasonably vague. *Id.* at 118. In reaching that conclusion, this court noted that a probationer has a due process right to conditions of supervised release that are sufficiently clear to inform him of what conduct will result in his being returned to prison. To resolve the vagueness problem with the condition, this court remanded with instructions that the trial court set out the prohibitions against "pornographic or sexually explicit materials" more specifically. *Id.*

In this case, the conditions of probation were not as patently overbroad as in *Smith*. The prohibition in *Smith* was against possession or viewing of any pornographic or sexually explicit material. Here, the prohibition was noted to include such things as videos, magazines, or any material which depicts partial or complete nudity or sexually explicit language. By including the restriction prohibiting the possession or viewing of any material which depicts partial or complete nudity, or sexually explicit language, the State argues that it is clear what types of materials are restricted.[8] We disagree.

7. An alternative reading of the probation condition could result in conduct prohibitions even more sweeping than the prohibition contemplated by Fitzgerald. The words "related to illegal or deviant interests or behaviors" could reasonably be read to refer only to possession of material which "depicts partial or complete nudity or sexually explicit language" and not to possession of "pornographic or sexually explicit materials." That such construction could be deemed not unreasonable derives from the use of the disjunctive

"or" between the prohibition covering "pornographic or sexually explicit materials" and the prohibition against "any material which depicts partial or complete nudity or sexually explicit language." However, as stated, we consider the interpretation placed upon the probation condition by Fitzgerald's argument.

8. In his reply brief, Fitzgerald asserts, with a degree of merit, that the condition is overbroad because it is not narrowly tailored to the goals of protecting the public and promot-

The purported specificity in this case, if less inclusive at all than the blanket prohibition against "pornographic or sexually explicit materials," is only slightly so.[9]

We hold that the attempt at specificity does not save the probation condition from the attack as overbroad. In this regard we allude to the remand observations made by the court in *Smith.* For example, the prohibition may validly forbid possession of child pornography and obscene matter. 779 N.E.2d at 118.

■ With reference to the phrase "deviant interests or behaviors," we have not held that it is a safe harbour from being successfully attacked as unconstitutionally vague. There is nothing included in the condition which indicates what is meant by the phrase "deviant interests or behaviors." Furthermore, the noun "deviance" is defined as "the quality or state of departing from established norms, esp. in social customs." Black's Law Dictionary 462 (7th ed.1999). We conclude that more specificity is required to inform Fitzgerald what is considered appropriate social norms and what may be considered a deviation from those norms.[10] Therefore, we remand to the trial court with instructions to set out any prohibition against materials related to deviant interests and behaviors with more specificity.

■ Finally, Fitzgerald contends that the condition prohibiting him from being present at parks and schools goes beyond what is reasonably necessary to protect the public or rehabilitate him. He asserts that there is no evidence which indicates that he ever went to a park or school to seek a sexual encounter and further, that it is not clear if the prohibition applies to all parks and schools, or only those where children are known to congregate.

■ Sexual predators prey upon those to whom they have access. *See Carswell,* 721 N.E.2d at 1259 (noting that child molesters molest children to whom they have access). Conditions of probation which reduce the potential for access to potential victims are reasonable. *Id.* Fitzgerald became sexually involved with a fourteen-year-old girl to whom he had access. She hung out at both the fire station and garage where he worked. She accompanied her father when he would go out to dinner with Fitzgerald. Restricting Fitzgerald's access to locations where other potential victims are present will further his rehabilitation and also protect those whom he may harm.[11]

■ We turn now to Fitzgerald's question about whether the prohibition on his presence at parks and schools applies to all locations or just those where children are known to congregate. This argument is

---

ing his rehabilitation, it encompasses newspapers and magazines which advertise swimwear or underwear, and it includes materials which do not fall within the definition of "obscene matter."

9. In one regard the purported specificity is even more inclusive than the generalized terms "pornographic or sexually explicit material." Material depicting partial nudity may be a far cry from being pornographic or sexually explicit.

10. Article 49 of Title 35 of the Indiana Code (Burns Code Ed. Supp.2003) provides defini-

tions related to obscenity and pornography. It does not define deviant interests or behaviors.

11. We are not persuaded by Fitzgerald's argument that there is a difference between his contact with A.V. at the garage, fire station, and his home and the lack of contact with her at parks or her school. In placing this condition upon Fitzgerald, the focus is upon the fact that individuals similar to A.V. will be there, not that he has previously committed a crime at those particular types of places.

related to his final contention, that the condition is void for vagueness because it fails to provide any ascertainable standard for him to know where he may be permitted to go.

As stated above, the condition is that Fitzgerald "shall not be present at parks, schools, playgrounds, day care centers, or _____ (other specific locations where children are known to congregate in your community)." App. at 159. This condition was part of a generic form in which the trial court marked the conditions of probation that would apply to Fitzgerald. As noted by the blank line in the condition, the form had some additional spaces where the trial court could write in additional conditions or expand certain restrictions. Here, the trial court made no additional restrictions or notations on the form. Accordingly, there are no such additional restrictions as conditions.

As argued by Fitzgerald, this court has determined that phrases similar to "other specific locations where children are known to congregate in your community" have been found to be unconstitutionally vague. In *Carswell*, this court determined that the use of the phrase "area where children congregate" did not provide the defendant with a predictable standard for identifying forbidden places. 721 N.E.2d at 1260. However, in that case there appears to have been no mention of the specific types of places, such as schoolyards and playgrounds, in the conditions of probation and this court remanded for the trial court to reconsider the condition in light of the discussion. *Id.* That same concern is not present here as the condition specifically restricts Fitzgerald from certain types of locations.

Nonetheless, that does not settle the dilemma of whether the phrase limiting access to specific locations where children are known to congregate applies to the entire condition. The phrase, as written, is not a separate restriction upon going to specific places where children are known to congregate. It only guides the trial court in adding additional specific locations to which Fitzgerald may not go.

Be that as it may, one may rely upon common sense to conclude that the phrase implicitly applies to all the conditions because children are known to congregate at parks, schools, playgrounds, and day care centers. For the most part this is true. However, it is quite possible and likely that children and teenagers do not congregate at all parks.[12] Given that the condition does not specifically include a restriction on any location where children are known to congregate, and that the restriction may be read to prohibit Fitzgerald from every park, even those where children do not congregate, we remand to the trial court to reconsider and clarify this condition, especially the use of the parenthetical notation.

### Conclusion

Based upon the foregoing, we conclude that the trial court erred in considering as an aggravating circumstance that Fitzgerald's actions may have impeded A.V.'s ability to pursue the goals and opportunities which young women may pursue because it was not supported by the evidence. However, because Fitzgerald received a sentence equal to the presumptive with three years suspended and there were several aggravating factors to balance against the mitigating factors, we cannot conclude that the sentence was inappropriate. Because of errors present in several of the conditions of probation assigned to Fitzgerald, we remand to the trial court to review and revise those conditions as necessary.

---

12. In his brief, Fitzgerald offers state parks as an example.

The judgment of the trial court is affirmed in part and reversed in part and remanded for further proceedings not inconsistent with this decision.

ROBB, J., concurs.

HOFFMAN, Sr.J., concurring in part and dissenting in part with opinion.

HOFFMAN, Senior Judge, concurring in result in part and dissenting in part:

I concur with the majority's conclusion that the trial court's imposition of the presumptive sentence was appropriate. I further concur with the result reached by the majority as it pertains to the trial court's consideration and balancing of aggravating and mitigating circumstances. I do not agree, however, that the trial court erred in determining that the limitation on the victim's future is a valid aggravator. The trial court could have utilized its discretion to determine that the victim did not understand the impact that Fitzgerald's behavior was going to have upon her future. A trial court should be able to use its discretion to evaluate this impact from the viewpoint of a mature individual.

I respectfully dissent to the majority's interpretation of *Griffin v. Wisconsin,* 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987). In *Griffin,* where the United States Supreme Court emphasized that searches of a probationer's home must be made on "reasonable grounds," it was doing so in reference to the use of the confiscated evidence in the subsequent conviction of the parolee on a separate criminal charge. I do not believe that *Griffin* applies in this case where the search condition is designed to insure compliance with conditions of probation, not to serve as the vehicle by which a separate criminal charge will be made.

In order to avail himself of the privilege of serving his time on probation rather than in prison, a probationer agrees to waive a number of rights that a law-abiding citizen may enjoy. For example, when a probationer agrees to be subjected to random blood tests, he is waiving a privacy right. The waiver of the right to be free from unreasonable searches is no more onerous than the aforementioned waiver. I believe that the majority is unreasonably tying the hands of the trial court and the probation department as they attempt to administer the important sentencing alternative of probation.

I also respectfully dissent to the majority's determination that probation provision #5 is overbroad. The provision gives Fitzgerald guidance pertaining to the type of media that might depict the prohibited "pornographic or sexually explicit" content, including "material which depicts partial and complete nudity or sexually explicit language or any other materials related to illegal or deviant interests or behaviors...." The goal of this provision is to prevent Fitzgerald from becoming so sexually aroused that he will repeat the deviate behaviors he engaged in with the victim. With this in mind, it is clear to me that the materials prohibited because they depict "partial and complete nudity" are not the *Indianapolis Star,* swimsuit or underwear advertisements, or the Sears catalog, but are materials that are intended to titillate and arouse by revealing those portions of a female's body that are normally covered. In addition, I believe that the phrase "illegal or deviant interests or behaviors" is not overbroad. These interests and behaviors are defined in Indiana statutes and are understood by any reasonable person.

I further respectfully dissent to the majority's conclusion that probation provision #14 is overbroad. The provision states that Fitzgerald may not be present at parks, schools, playgrounds, or day care

centers and then provides a blank for the inclusion of *"other* specific locations where children are known to congregate in your community." (emphasis supplied). For the blank to include "other" specific locations where children are known to congregate in your community, there must have already been such locations listed. These locations where children are known to congregate are the aforementioned parks, schools, playgrounds, and day care centers. The provision is not overbroad.

The majority notes that Fitzgerald has suggested that state parks may be parks where children are not known to congregate. In lieu of living in confinement provided by a prison, Fitzgerald will be allowed at some point to live in society. In living outside the confines of the prison, Fitzgerald will have to exercise some caution. I do not believe that the State is required to conduct a statewide survey of parks to assist Fitzgerald in his newfound freedom.

I would affirm the trial court in all respects.

**B.J.B., Appellant–Defendant,**