**Kenneth L. COLLINS,**
**Appellant/Defendant,**

v.

**STATE of Indiana, Appellee/Plaintiff.**

**No. 35A02–0902–CR–162.**

Court of Appeals of Indiana.

Aug. 21, 2009.

Matthew G. Grantham, Bowers, Brewer, Garrett & Wiley, LLP, Huntington, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Zachary J. Stock, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BRADFORD, Judge.

Appellant/Defendant Kenneth Collins appeals from the trial court's alteration of the terms of his probation, which was originally imposed following his February of 2000 guilty plea to Class B felony Rape. We affirm in part and remand in part.

## FACTS AND PROCEDURAL HISTORY

A panel of this Court set forth the underlying facts of Collins's conviction as follows:

The factual basis for Collins' guilty plea reveals that on June 30, 1999, he went to the residence of seventeen-year-old C.G., his ex-girlfriend. Collins looked inside the house and saw C.G. asleep on a couch. He then entered the house without permission, took off C.G.'s clothes while she slept, and began having sexual intercourse with her. When C.G. woke up, she tried to get Collins off of her, but he refused. After the sexual act was complete, Collins picked up a knife he had carried into the house and threatened to kill C.G. if she pressed charges. At the time of this incident, a protective order was in effect against Collins to prohibit any contact with C.G. Collins was charged with rape, a Class A felony, invasion of privacy, a Class B misdemeanor, and burglary, a Class B felony. He agreed to plead guilty to rape, on the condition that it was reduced to a class B felony, and to burglary; the invasion of privacy charge was dismissed. Because the plea agreement did not address Collins' sentence, the trial court conducted a sentencing hearing after it accepted the plea. It sentenced Collins to eighteen-year terms of imprisonment for both the rape and burglary convictions, representing the presumptive ten-year term for a Class B felony plus eight years for aggravating circumstances. It ordered that those terms be served consecutively for a total executed sentence of thirty-six years, though it suspended ten years of that sentence.

*Collins v. State*, 740 N.E.2d 143, 145–46 (Ind.Ct.App.2000) (footnotes omitted).

Collins's plea agreement with the State, as embodied in his "Motion to Enter a Plea of Guilty" and "Written Advisement and Waiver of Rights," explained that the maximum penalty for a Class B felony was a twenty-year sentence and that "[i]f the Court suspends any part of your sentence, you must be put on probation." Appellant's App. p. 80. On direct appeal, this Court affirmed his convictions but remanded for resentencing. *Id.* at 149. On January 22, 2001, the trial court again imposed a sentence of thirty-six years of incarceration with ten years suspended to probation.

In October of 2008, the State orally moved the trial court to hold a hearing regarding the terms of Collins's probation. On January 12, 2009, soon after Collins's release from prison, the trial court held a hearing regarding Collins's probation, and he appeared *pro se.* Collins objected to the State's proposed addition of special sex offender probation terms on the bases that his probation could not be altered without a violation of its original terms and that the trial court may not impose terms of probation that are not required by statute. At a second hearing on January 20, 2009, the trial court imposed new terms of probation, including standard terms and the special sex offender terms ("Special Stipulations") to which Collins objected.

The Special Stipulations imposed were as follows:

1. You shall attend and complete Sexual Perpetrator's Counseling with Ed Pereira of the Family Service Society, Inc. in Marion, Indiana, at your own expense. This also includes the payment of an annual maintenance polygraph test. You must maintain steady progress towards all treatment goals and may not change treatment providers without prior approval of your Probation Officer.

2. You shall have no contact (direct or indirect) with any child, including the victim(s) or any member of the victim(s) family. Nor shall you attempt to contact, except under circumstances approved in advance and in writing by your Probation Officer in consultation with your treatment provider. You must report any incidental contact with children to your Probation Officer within 24 hours of the contact.

3. You shall be required to inform all persons living at the same residence as you of current and previous sex related convictions prior to establishing residency, as verified by your Probation Officer. You shall notify your Probation Officer of any change in home situation or marital status within 24 hours. You shall have only one residence and mailing address at a time.

4. You shall not reside within one thousand (1,000) feet of school property in accordance with IC 35–38–2–2.2 and IC35–41–1–24.7.[sic] (**Required as a condition of probation by statute**).

5. You shall register at the Sheriff's Department in the county in which you reside and are employed in, as a Sex Offender within seven (7) days of being released from custody to probation supervision in accordance with IC 5–2–12–5. (**Required as a condition of probation by statute**). You shall be under intense supervision and report to your probation officer as directed.

6. You shall notify your probation officer of your establishment of a dating, intimate, and/or sexual rela-

tionship. You must report whether the person you are having a relationship with has children under the age of 18 years and whether the children reside in the person's home. You shall notify any person with whom you are engaged in a dating, intimate or sexual relationship of your sex-related conviction(s).

7. You shall refrain from "cruising" activity, frequenting areas where potential victims can be encountered.

8. You shall not hitchhike or pick-up hitchhikers. You shall not travel alone after 10 p.m. (including but not limited to: driving, walking, bicycling, etc.) unless given permission by your probation officer.

9. You shall not use your employment as a means to acquire new victims. Your Probation Officer may contact your employer at any time. You will not work in certain occupations that involve being in the private residences of others, such as, but not limited [to]: door-to-door sales, soliciting, or delivery. Your Probation Officer must first approve any employment that you do engage in.

10. You shall not possess any items on your person, in your vehicle, in your place of residence or as a part of your personal effects, that attract children or that may be used to coerce children to engage in inappropriate or illegal sexual activities. You will not engage in any activities that could be construed as enticing children.

11. You shall not possess any sexually arousing materials, to include, but not limited to: videos, magazines, books, internet web sites, games, sexual devices or aids, or any mate-

rial which depicts partial or complete nudity or sexually explicit language or any other materials related to illegal or deviant interests or behaviors. You shall not visit strip clubs, adult bookstores, ordering of adult movies through cable TV pay-per-view network, peep shows, bars where topless or exotic dancers perform or businesses that sell sexual devices or aids. You shall not possess personal contact materials (i.e.: magazines or papers) that contain information about persons who desire to have personal relationships of any kind with others, nor will you place any ads that are sexual in content or respond by computer, telephone or Internet web sites, to any sexually solicitous ads.

12. You shall not use any computer with access to any "on-line computer service" at any location (including place of employment) without the prior approval of your Probation Officer. This includes any Internet Service Provider, Bulletin Board System, E-Mail System, or any other public or private computer network.

13. You shall allow your Probation Officer and/or computer service representative to conduct periodic, unannounced examination of your computer(s) equipment that may include retrieval and copying of all files from your computer(s) and any internal or external peripherals to ensure compliance with your stipulations. This may require removal of such equipment for the purpose of conducting a more thorough inspection. Your Probation Officer may have installed on your computer(s), at your own expense,

any hardware or software systems to monitor your computer usage.

14. You shall not reside within one (1) mile of the victim as a condition of probation or parole.

15. You must never be alone· or have contact with any person under the age of 18. Any contact with a person under the age of 18 must be supervised by an adult or approved by the Court. You must report any incidental contact with persons under age 18 to your probation officer with[in] 24 hours of contact.

16. You shall not be present at parks, schools, playgrounds, day care centers, or other specific locations where children are known to congregate in your community.

17. You shall not participate in any activity which involves children under 18 years of age, such as, but not limited to, youth groups, Boy Scouts, Brownies, 4–H, YMCA, YWCA, or youth sports teams, unless given permission by the Court.

Appellant's App. p. 21.

## DISCUSSION AND DECISION

On appeal, Collins challenges the Special Stipulations that were added to his probation. First, Collins contends that the trial court abused its discretion in imposing Special Stipulations without evidence of a probation violation. Second, Collins contends that the trial court abused its discretion in imposing the Special Stipulations when the plea agreement did not give the trial court that discretion. Third, Collins contends that the imposition of the Special Stipulations violates his right to due process and constitutes the enactment of an *ex post facto* law. Finally, Collins contends that, even if the trial court could otherwise legally impose the Special Stipu-

lations, several of them are impermissibly vague.

## I. Whether the Trial Court Abused its Discretion in Imposing Sex Offender Terms

 "[A] trial judge enjoys wide latitude in fashioning the terms of a defendant's probation." *Bailey v. State,* 717 N.E.2d 1, 4 (Ind.1999) (citing *State ex rel. Abel v. Vigo Cir. Ct.,* 462 N.E.2d 61, 63 (Ind.1984)). This court will not set aside the terms of a probation order unless the trial court has abused its discretion. *See id.*

### A. Effect of Indiana Code Section 35–38–2–1.8

Indiana Code section 35–38–2–1.8 (enacted 2005) provides, in part, as follows:

The court may hold a new probation hearing at any time during a probationer's probationary period:

(1) upon motion of the probation department or upon the court's motion; and

(2) after giving notice to the probationer.

(c) At a probation hearing . . . , the court may modify the probationer's conditions of probation. If the court modifies the probationer's conditions of probation, the court shall:

(1) specify in the record the conditions of probation; and

(2) advise the probationer that if the probationer violates a condition of probation during the probationary period, a petition to revoke probation may be filed before the earlier of the following:

(A) One (1) year after the termination of probation.

(B) Forty-five (45) days after the state receives notice of the violation.

(d) The court may hold a new probation hearing under this section even if:

(1) the probationer has not violated the conditions of probation; or

(2) the probation department has not filed a petition to revoke probation.

Collins contends, however, that the case of *Jones v. State,* 789 N.E.2d 1008 (Ind.Ct. App.2003), *trans. denied,* controls, in which this court concluded that the trial court abused its discretion when it issued additional discretionary terms of probation in the absence of a probation violation. *Id.* at 1012. The State counters that Indiana Code section 35–38–2–1.8, which specifically provides for alteration of probation terms even in the absence of a violation, has superseded *Jones.* On this point, we agree with the State.

■ The simple fact is that section 35–38–2–1.8 was enacted some two years after *Jones* was handed down, and directly contradicts its holding.

The entire lawmaking power of the state is vested by our state Constitution in the general assembly; and the legislature is not restricted in the exercise of that power except by the express provisions of the state Constitution and those provisions of the federal Constitution which apply to the states and by the provisions of treaties concluded in accordance with the provisions of the federal Constitution.[1]

*Cent. Union Tel. Co. v. Indpls. Tel. Co.,* 189 Ind. 210, 219, 126 N.E. 628, 632 (1920). Indiana Code section 35–38–2–1.8 clearly gives a trial court authority to revise the terms of probation regardless of whether a probation violation has occurred, superseding *Jones* on this point.[2]

■ We acknowledge that, in general, "the law in effect at the time that the crime was committed is controlling." *Holsclaw v. State,* 270 Ind. 256, 261, 384 N.E.2d 1026, 1030 (1979). But an "exception to this rule exists for remedial statutes, which are statutes intended to cure a defect or mischief that existed in a prior statute." *Martin v. State,* 774 N.E.2d 43, 44 (Ind.2002). "When a remedial statute is involved, a court must construe it to 'effect the evident purpose for which it was enacted[.]'" *Id.* (quoting *Conn. Mut. Life Ins. Co. v. Talbot,* 113 Ind. 373, 378, 14 N.E. 586, 589 (1887)) (alteration in *Martin*). "Accordingly, remedial statutes will be applied retroactively to carry out their legislative purpose unless to do so violates a vested right or constitutional guaranty." *Id.*

■ Here, we conclude that Indiana Code section 35–38–2–1.8 is remedial in that it was intended to clarify that probation can be altered at any time, even in the absence of a probation violation. Since its enactment in 1983, Indiana Code section 35–38–2–1(b) has provided, *inter alia,* that "[t]he court may ... modify the conditions [of probation] at any time." Prior to

1. This quotation as transcribed in the *www. westlaw.com* database and in West Publishing's printed Northeastern Reporter capitalizes "General Assembly" and "Legislature." Although the differences do not seem to alter the meaning of the cited passage, we will continue to use caution in citing to non-official sources.

2. Collins draws our attention to *Ferrill v. State,* 904 N.E.2d 323 (Ind.Ct.App.2009), in which another panel of this court applied

*Jones's,* holding to conclude that the trial court was without authority to modify terms of probation absent a probation violation. *Id.* at 325. We observe, however, that the *Jones* Court did not mention, much less address the applicability of, Indiana Code section 35–38–2–1.8, possibly because the State did not file an appellate brief. *Id.* at 324. Because Indiana Code section 35–38–2–1.8 clearly supersedes *Jones,* we decline to follow *Ferrill.*

*Jones,* it seems to have been understood that this provision did, in fact, enable a trial court to alter the terms of probation at any time, even in the absence of a probation violation. *See, e.g., Malone v. State,* 571 N.E.2d 329, 330–31 (Ind.Ct.App. 1991) ("However, this restriction is tempered by the power of the trial court to modify the conditions of probation at any time." (citing Ind.Code § 35–38–2–1(b)(1))). In June of 2003, however, the *Jones* Court interpreted section 35–38–2–1(b) as limiting the ability of a trial court to alter the terms of probation to situations where a violation had been shown. *Jones,* 789 N.E.2d at 1012.

In November of 2004, the Indiana Sentencing Policy Study Committee adopted and issued a proposal for "[t]he modification of the statute to permit a Court to hold a new probation hearing and modify a probationer's conditions of probation at any time during the probationary period." Final Report of the Sentencing Policy Study Committee 17 (2004). The Committee also included a draft statute that was later enacted unaltered as Indiana Code section 35–38–2–1.8. *Id.* at App. 5. In 2005, the 114th General Assembly passed Senate Enrolled Act 101, which contained section 35–38–2–1.8, and it is clear that the bill was the product of the Study Committee's proposals. *See* Ind. P.L. 14–2005 § 1; Digest of Senate Bill 101 (March 18, 2005) (available at http://www.state.in.us/legislative/bills/2005/PDF/ES/ES0101.1.pdf). In view of this history, the legislature's evident purpose in enacting section 35–38–2–1.8 was to supersede the holding in *Jones,* and we now give effect to that purpose.

## B. Imposition of Probation Terms not Specified in the Guilty Plea Agreement

■ Collins seems to contend that the trial court's imposition of the Special Stipulations runs afoul of the Indiana Supreme Court's decision in *Freije v. State,* 709 N.E.2d 323 (Ind.1999). In *Freije,* the Court held that a trial court may impose terms of probation following a guilty plea when the terms imposed are "administrative or ministerial conditions[,]" " '[A] condition of probation which imposes a substantial obligation of a punitive nature is ... specified in the plea agreement[,]' " or the plea agreement specifically gives the trial court discretion to establish the terms of probation. *Id.* at 324–25 (quoting *Disney v. State,* 441 N.E.2d 489, 494 (Ind.Ct. App.1982)). Collins, however, has failed to identify which of the seventeen Special Stipulations he believes are impermissibly substantive and punitive, and has therefore waived this particular claim for lack of cogent argument. *See* Ind. Appellate Rule 46(A)(8)(a).

## II. Whether the Terms of Collins's Probation are Unconstitutional

### A. Due Process

■ Collins contends that the modification of the terms of his probation here was a *de facto* probation revocation due to the allegedly punitive restrictions imposed. Therefore, Collins argues, he was entitled to all of the due process that would have been afforded in a probation violation proceeding under Indiana Code section 35–38–2–3 (2008).[3] The State counters that

---

**3.** In a hearing on an alleged probation violation,

> The court shall conduct a hearing concerning the alleged violation. The court may admit the person to bail pending the hearing[.] The state must prove the violation by

a preponderance of the evidence. The evidence shall be presented in open court. The person is entitled to confrontation, cross-examination, and representation by counsel.

Ind.Code § 35–38–2–3(d); -(e)."

**710**

mere modification of the terms of probation, as opposed to a revocation, does not pose an immediate threat to liberty and that a modification does not entitle one to the same procedural protections as required in a revocation proceeding.

The United States Supreme Court has said the following regarding the general nature of the process due in a given situation: [4]

> Whether any procedural protections are due depends on the extent to which an individual will be 'condemned to suffer grievous loss.' *Joint Anti–Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 168, 71 S.Ct. 624, 646, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring), quoted in *Goldberg v. Kelly*, 397 U.S. 254, 263, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287 (1970). The question is not merely the 'weight' of the individual's interest, but whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment. *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). Once it is determined that due process applies, the question remains what process is due. It has been said so often by this Court and others as not to require citation of authority that due process is flexible and calls for such procedural protections as the particular situation demands. '(C)onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.' *Cafeteria & Restaurant Workers Union v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). To say that the concept of due process is flexible does not mean that judges are at large to apply it to any and all relationships. Its flexibility is in its scope once it has been determined that some process is due; it is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure.

*Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

In the context of the revocation of probation or parole, the United States Supreme Court identified the following procedural safeguards that were to be provided:

> (a) [W]ritten notice of the claimed violations of (probation or) parole; (b) disclosure to the (probationer or) parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking (probation or) parole.[5]

---

**4.** Collins concedes that there appears to be no authority providing that probationers are due more process in this context under the Indiana Constitution than the Federal Constitution, and our research has uncovered none.

**5.** We observe that, as required by Indiana Code section 35–38–2–1.8(b), Collins received notice of the new probation hearing and the hearing was held before a neutral magistrate. The other guarantees mentioned in *Gagnon* have no applicability in the probation modification context, where no evidence is presented.

*Gagnon v. Scarpelli,* 411 U.S. 778, 786, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (quoting *Morrissey,* 408 U.S. at 489, 92 S.Ct. 2593) (modifications in parentheses in *Gagnon* ).

The first court to address the question of what process is due in the context of a probation *modification* was the Court of Appeals for the Third Circuit, which observed the following:

> While we acknowledge that probation entails significant restrictions on an individual, an extension of probation is clearly not as 'grievous' a 'loss' as revocation[.] In fact, the primary 'loss' suffered by an individual whose probation has been extended lies not in the continuing restrictions themselves, but in the possibility of future revocation. While such a loss is indeed serious, it is merely potential at the time of extension, and the due process clause clearly provides the protection of a hearing in the event that revocation proceedings should subsequently occur.

*Skipworth v. U.S.,* 508 F.2d 598, 601–02 (3rd Cir.1975). We reach the same overall conclusion here as the *Skipworth* Court and the other federal and state courts that have followed it,[6] namely, that altering the terms of probation, like a probation extension, does not trigger the protections of due process that obtain in a revocation proceeding.

▆ Quite simply, an expansion of the terms of probation is not as grievous a loss as its revocation; whatever the impact of the additional terms on liberty, that impact does not approach that of incarceration. As the Connecticut Supreme Court has stated, "The primary loss occasioned by a modification of a condition of probation is still only the possibility of future revocation, a loss that potentially occurs only if the condition is not met." *State v. Smith,* 255 Conn. 830, 769 A.2d 698, 704 (2001). "Because a probationer is entitled to a hearing prior to revocation, the potential of loss caused by modifying a condition of probation is not considered sufficiently grievous to require a hearing." *Id.* at 705. We are left, then, with a merely potential loss that can be addressed should Collins ever be accused of violating the terms of his probation, at which time he would receive the due process detailed in Indiana Code section 35–38–2–3.

Collins relies on the case of *In re Wagner,* 127 Cal.App.4th 138, 25 Cal.Rptr.3d 201 (2005), to support his contention that his probation has been *de facto* revoked by imposition of the Special Stipulations. In that case, when the probationer refused to " 'pay a donation of $1,000.00 to the victim witness assistance fund,' " the trial court "ordered him taken into custody without bail and set a probation revocation hearing for ... almost a month later." *Id.* at 203. The court concluded that "[p]lacing petitioner in jail, denying him bail, and scheduling a hearing a month hence constituted a de facto revocation of his probation without satisfying any of the due process requirements demanded upon such revocation." *Id.* at 206. *Wagner,* however is distinguishable, as it involved actual incarceration and denial of bail, as though the probation had already been revoked. Nothing approaching incarceration without bail has occurred here, and we decline

---

6. *Skipworth* has been followed by several other United States Courts of Appeals and state courts. *See, e.g., U.S. v. Silver,* 83 F.3d 289, 291–92 (9th Cir.1996); *U.S. v. Ortiz,* 733 F.2d 1416, 1417–18 (10th Cir.1984); *Forgues v. U.S.,* 636 F.2d 1125, 1126 (6th Cir.1980); *U.S. v. Cornwell,* 625 F.2d 686, 688 (5th Cir. 1980); *U.S. v. Carey,* 565 F.2d 545, 546 (8th Cir.1977); *People v. Conner,* 148 P.3d 235, 239 (Colo.Ct.App.2006); *Gould v. Patterson,* 253 Ga.App. 603, 560 S.E.2d 37, 39 (2002); *State v. McDonald,* 272 Kan. 222, 32 P.3d 1167, 1172 (Kan.2001); *State v. Smith,* 255 Conn. 830, 769 A.2d 698, 704–05 (2001).

Collins's invitation to apply *Wagner's* holding to this case and declare the imposition of the Special Stipulations to be a *de facto* probation revocation.

### B. *Ex Post Facto* Law

 Collins also contends that the trial court's imposition of the Special Stipulations is an impermissible *ex post facto* law. "Article I of the United States Constitution provides that neither Congress nor any state may pass any ex post facto law." *Armstrong v. State*, 848 N.E.2d 1088, 1092 (Ind.2006) (citing U.S. CONST. art. I, § 9; U.S. CONST. art. I, § 10). Similarly, the Indiana Constitution provides that "[n]o ex post facto law ... shall ever be passed." IND. CONST. art 1, § 24. "An ex post facto law is one which applies retroactively to disadvantage an offender's substantial rights." *Armstrong*, 848 N.E.2d at 1092–93 (citing *Weaver v. Graham*, 450 U.S. 24, 29–30, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981)).

 "The ex post facto clauses prohibit Indiana from enacting a law that 'imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'" *Goldsberry v. State*, 821 N.E.2d 447, 464 (Ind.Ct.App.2005) (quoting *Spencer v. O'Connor*, 707 N.E.2d 1039, 1042 (Ind.Ct.App.1999)). The focus of the *ex post facto* inquiry is not on whether the legislative change causes a disadvantage. *Id.* Instead, we must determine whether the change "increases the penalty by which a crime is punishable" or "alters the definition of criminal conduct[.]" *Id.*

 The *ex post facto* clause is not designed "to limit legislative control of remedies and modes of procedure which do not affect matters of substance." *Hayden v. State*, 771 N.E.2d 100, 102 (Ind.Ct.App.2002) (citation omitted), *trans. denied.*

"Even though it may work to the disadvantage of a defendant, a procedural change is not ex post facto." *Id.* A change to a statute is procedural, as opposed to substantive, if "[i]t does not increase defendant's punishment, change the elements of or the facts necessary to prove the offense, or deprive defendant of some defense or some lesser punishment that was available at the time of the crime." *Crawford v. State*, 669 N.E.2d 141, 150 (Ind.1996).

Indiana Code section 35–38–2–1.8 does not increase the punishment for or change the elements of any crime or deprive anyone of a defense or lesser punishment. The statute in question merely defines when and how a trial court may alter the terms of probation after their original imposition. As such, we conclude that Indiana Code section 35–38–2–1.8 does not violate constitutional prohibitions against *ex post facto* laws.

### III. Whether the Sex Offender Terms are Impermissibly Vague

 Collins contends that several of the Special Stipulations are impermissibly vague. "A trial court enjoys broad discretion when determining the appropriate conditions on probation." *McVey v. State*, 863 N.E.2d 434, 447 (Ind.Ct.App. 2007) (citing *Smith v. State*, 779 N.E.2d 111, 117 (Ind.Ct.App.2002)), *trans. denied.* "However, this discretion is limited by the principle that the conditions imposed must be reasonably related to the treatment of the defendant and the protection of public safety." *Id.* (citing *Smith*, 779 N.E.2d at 117). "Where the defendant challenges a probationary condition on the basis that it is unduly intrusive on a constitutional right, we evaluate that claim by balancing the following factors: (1) the purpose to be served by probation, (2) the extent to which constitutional rights enjoyed by law-abiding citizens should be enjoyed by probationers, and (3) the legitimate needs of

law enforcement." *Id.* (citing *Smith,* 779 N.E.2d at 117).

■ Here, Collins does not allege that the Special Stipulations are unduly intrusive based upon the above balancing test. Instead, Collins argues that seven of the Special Stipulations are unconstitutionally vague. A probationer has a due process right to conditions of supervised release that are sufficiently clear to inform him of what conduct will result in his being returned to prison. *Id.* (citing *U.S. v. Guagliardo,* 278 F.3d 868, 872 (9th Cir.2002)). Collins requests remand for clarification of the challenged Special Stipulations.

### A. Establishment of a "Dating" Relationship

■ Special Stipulation 6 provides as follows:

> You shall notify your probation officer of your establishment of a dating, intimate, and/or sexual relationship. You must report whether the person you are having a relationship with has children under the age of 18 years and whether the children reside in the person's home. You shall notify any person with whom you are engaged in a dating, intimate or sexual relationship of your sex-related conviction(s).

Appellant's App. p. 21.

In *McVey* this court concluded that a similar provision which also referenced a "dating" relationship was not sufficiently clear to inform the defendant of the prohibited or regulated conduct. *McVey,* 863 N.E.2d at 448–49. As the *McVey* Court observed, "dating" may be interpreted as including the most mundane activities as going out for coffee with a friend, which would impose an unreasonable burden upon the defendant, or it could be interpreted as being limited to "intimate occasions and sexual contact," thereby rendering the "dating" language superfluous. *Id.*

Because of the lack of clarity with respect to the term "dating," the *McVey* court remanded to the trial court to reconsider and clarify this condition with greater specificity. *Id.* at 449.

Similarly, Collins's probationary requirements are dependent upon a proper interpretation of "dating," and the definition of "dating" is not clear from the stipulations. As the *McVey* court observed, Collins has a due process right to sufficiently clear conditions of probation such that he is informed of the conduct which will result in his being returned to prison. *Id.* at 447. The States concedes that this stipulation is impermissibly vague, and we remand to the trial court to reconsider and clarify this condition with greater specificity.

### B. "Cruising" Activity

■ Special Stipulation 7 provides as follows: "You shall refrain from 'cruising' activity, frequenting areas where potential victims can be encountered." Appellant's App. p. 21. Stipulation 7 appears to define "cruising" as "frequenting areas where potential victims can be encountered." Yet, phrases such as "other specific locations where children are known to congregate in your community" have been found to be unconstitutionally vague because they provide the defendant with no predictable standard for identifying forbidden places. *See Fitzgerald v. State,* 805 N.E.2d 857, 868 (Ind.Ct.App.2004) (citing *Carswell v. State,* 721 N.E.2d 1255, 1260 (Ind.Ct.App. 1999)). We conclude that "frequenting areas where potential victims can be encountered," which is even less specific, is similarly unconstitutionally vague. The State concedes that this stipulation is impermissibly vague, and we remand to the trial court to reconsider and clarify this condition.

### C. "Enticing" Activity

■ Special Stipulation 10 provides as follows:

You shall not possess any items on your person, in your vehicle, in your place of residence or as a part of your personal effects, that attract children or that may be used to coerce children to engage in inappropriate or illegal sexual activities. You will not engage in any activities that could be construed as enticing children.

Appellant's App. p. 21.

As Collins argues, prohibited items under this stipulation could range from kites and balloons to chocolate bars, and prohibited conduct could include such potentially innocuous activities as standing on one's head or juggling, any one of which could be construed as "enticing children." We therefore remand to the trial court to reconsider and clarify this condition.

### D. Sexually Arousing Materials

▮ Special Stipulation 11 provides as follows:

You shall not possess any sexually arousing materials, to include, but not limited to: videos, magazines, books, internet web sites, games, sexual devices or aids, or any material which depicts partial or complete nudity or sexually explicit language or any other materials related to illegal or deviant interests or behaviors. You shall not visit strip clubs, adult bookstores, ordering of adult movies through cable TV pay-per-view network, peep shows, bars where topless or exotic dancers perform or businesses that sell sexual devices or aids. You shall not possess personal contact materials (i.e.: magazines or papers) that contain information about persons who desire to have personal relationships of any kind with others, nor will you place any ads that are sexual in content or respond by computer, telephone or Internet web sites, to any sexually solicitous ads.

Appellant's App. p. 21.

The *McVey* court, upon reviewing a similar provision prohibiting the possession of "pornographic or sexually explicit materials," and materials related to "illegal or deviant interests or behaviors," held that it was unconstitutionally vague. *McVey*, 863 N.E.2d at 447–48. In reaching this holding, the *McVey* court relied largely upon *Fitzgerald*, which had previously held that the phrase "pornographic or sexually explicit materials" was overbroad and that the phrase "deviant interest or behaviors" provided the defendant no insight into appropriate social norms, much less deviations therefrom. *Fitzgerald*, 805 N.E.2d at 866–67. Both the *McVey* and *Fitzgerald* courts therefore remanded for clarification of the provision. *McVey*, 863 N.E.2d at 448; *Fitzgerald*, 805 N.E.2d at 867.

Here, we cannot say that the phrase "sexually arousing materials" used in the stipulation at issue is any more informative with respect to the particular materials prohibited than the phrase "pornographic or sexually explicit materials" used in *McVey* and *Fitzgerald*. In addition, this stipulation includes what both the *McVey* and *Fitzgerald* courts concluded was the unconstitutionally vague language "deviant interests or behaviors." *McVey*, 863 N.E.2d at 447–48; *Fitzgerald*, 805 N.E.2d at 867. Furthermore, as Collins points out, this stipulation places an unfairly broad prohibition on Collins's ability to visit businesses which sell "sexual devices or aids," which could extend to drug stores, and possessing materials which might contain information about persons seeking "personal relationships of any kind," which could extend to local newspapers advertising roommate services. Accordingly, we remand for clarification of the stipulation, which the State concedes is the proper course. In doing so, we repeat the *McVey* court's suggestion that the trial court consider the following language from

*Smith v. State*, 779 N.E.2d 111, 118 (Ind. Ct.App.2002), *trans. denied*, for purposes of defining pornographic or "sexually arousing" material with more specificity:

[T]he definition of "child pornography" found in the federal statute might be a useful tool in this endeavor. *See* 18 U.S.C. § 2256(8). And the trial court might prohibit [the probationer] from possessing any materials that fall under the definition of "obscene matter." *See* Ind.Code § 35-49-2-1. But whatever the court decides, the condition should be narrowly tailored to the goals of protecting the public and promoting [the probationer's] rehabilitation.

*McVey*, 863 N.E.2d at 448 (quoting *Smith*, 779 N.E.2d at 118).

### E. Incidental Contact

■ Stipulation 15 provides as follows: You must never be alone or have contact with any person under the age of 18. Any contact with a person under the age of 18 must be supervised by an adult or approved by the Court. You must report any incidental contact with persons under age 18 to your probation officer with [sic] 24 hours of contact.

Appellant's App. p. 21. Upon addressing a similar "incidental contact" provision, the *McVey* court held that it was unconstitutionally broad given that any number of slight encounters in public could trigger the reporting requirement. *McVey*, 863 N.E.2d at 449. We agree, and the State concedes, that this stipulation is impermis-

sibly vague, and we therefore remand this stipulation to the trial court for clarification.

### F. Presence at Locations Where Children Are Known to Congregate

■ Stipulation 16 provides as follows: "You shall not be present at parks, schools, playgrounds, day care centers, or other specific locations where children are known to congregate in your community." Appellant's App. p. 21.

We acknowledge that phrases such as "other specific locations where children are known to congregate in your community" have been found to be unconstitutionally vague because they provide the defendant with no predictable standard for identifying forbidden places. *See Fitzgerald*, 805 N.E.2d at 868 (citing *Carswell*, 721 N.E.2d at 1260). Here, however, this phrase is adequately clarified by the preceding language suggesting that the forbidden sites at issue, where children are known to congregate, are generally "parks, schools, playgrounds, and day care centers." This language provides Collins with a predictable standard for identifying forbidden places and is not unconstitutionally vague.[7] *See id.* at 868; *see also Carswell*, 721 N.E.2d at 1260.

### G. Participation in Activities Involving Children

■ Stipulation 17 provides as follows: "You shall not participate in any activity which involves children under 18 years of

---

7. In reaching this conclusion, we recognize that the *McVey* and *Fitzgerald* courts reversed similar stipulations as being unconstitutionally vague. In those stipulations, however, it was unclear whether the language "other specific locations where children are known to congregate in your community" was a part of the stipulation because it was included in a parenthetical following a blank line which the trial court had not filled in. *McVey*, 863

N.E.2d at 449–50; *Fitzgerald*, 805 N.E.2d at 868. The *McVey* and *Fitzgerald* courts were therefore concerned that the prohibited locations might include parks, etc., whether or not children were known to congregate there. *McVey*, 863 N.E.2d at 450; *Fitzgerald*, 805 N.E.2d at 868. Here, it is clear that the language "other specific locations where children are known to congregate" was a clear part of the stipulation.

age, such as, but not limited to, youth groups, Boy Scouts, Brownies, 4–H, YMCA, YWCA, or youth sports teams, unless given permission by the Court." Appellant's App. p. 21.

As with Stipulation 16, we conclude that Stipulation 17 consists of somewhat vague language that might otherwise be inadequate were it not sufficiently clarified elsewhere in the stipulation. While we acknowledge that "any activity which involves children under 18 years of age" would, if standing alone, provide for no predictable standard for behavior, the stipulation also included a list of prohibited activities, including "Boy Scouts, Brownies, 4–H, YMCA, YWCA, or youth sports teams[,]" which are all examples of organized youth activities typically supervised by adults. We conclude the above list sufficiently clarifies that Collins is not to be one of those adults in a supervisory role in the named or similar organizations. So, contrary to Collins's assertion, we conclude that Stipulation 17 would not prevent him from attending activities such as church services, but that it would prevent him from teaching Sunday School or supervising a youth group at the church. The language in Stipulation 17 is adequate to provide Collins with a predictable standard for his actions in this regard.

### IV. Conclusion

We conclude that the imposition of the Special Stipulations did not constitute an abuse of discretion, did not violate due process, and was not an *ex post facto* law. We further conclude, however, that Special Stipulations 6, 7, 10, 11, and 15 were impermissibly vague, and we therefore remand this cause to the trial court for clarification of those terms.

The judgment of the trial court is affirmed in part and remanded in part with instructions.

BROWN, J., concurs.

CRONE, J., concurring in part and dissenting in part.

CRONE, Judge, concurring in part and dissenting in part.

I concur with the majority's opinion in all respects except for its determination that Stipulations 16 and 17 are not unconstitutionally vague. Pursuant to *McVey*, 863 N.E.2d 434, and *Fitzgerald*, 805 N.E.2d 857, I would remand to the trial court to reconsider and clarify these conditions.