# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**DANIEL MCNAMARA**
**PATRICK L. PROCTOR**
Eilbacher Fletcher, LLP
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEES:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**DAVID A. ARTHUR**
**STEPHANIE L. ROTHENBERG**
Deputies Attorney General
Indianapolis, Indiana

**FILED**

Jan 23 2013, 8:45 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

DAVID BLEEKE,                                      )
                                                   )
    Appellant-Plaintiff,                         )
                                                   )
    vs.                                          )    No.  02A05-1201-PL-25
                                                   )
STATE OF INDIANA, EDWIN G. BUSS, in his            )
Capacity as Commissioner of the Indiana            )
Department of Corrections; GREGORY SERVER,         )
as Chairman of the Indiana Parole Board;           )
RANDALL P. GENTRY, as Vice Chairman of the         )
Indiana Parole Board; THOR R. MILLER, as a         )
Member of the Indiana Parole Board; VALERIE J.     )
PARKER, as a Member of the Indiana Parole          )
Board; WILLIAM R. HARRIS, as a Member of the       )
Indiana Parole Board; MIA KELSAW, as a Parole      )
Supervisor for the Indiana Parole Board, Fort      )
Wayne District 2; DAMITA                            )
VANLANDINGHAM, as a Parole                          )
Supervisor for the Indiana Parole Board, Fort      )
Wayne District 2; SUSAN FEASBY, as a Parole        )
Supervisor for the Indiana Parole Board, Fort      )
Wayne District 2,                                  )
                                                   )
    Appellees-Defendants.                        )

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Nancy Eshcoff Boyer, Judge
Cause No. 02D01-1005-PL-164

**January 23, 2013**

**OPINION – FOR PUBLICATION**

**DARDEN, Senior Judge**

STATEMENT OF THE CASE

David Bleeke ("Bleeke") appeals the trial court's grant of partial summary judgment in favor of the defendants in response to Bleeke's complaint for declaratory and injunctive relief filed against the State of Indiana; Edwin G. Buss (in his capacity as former Commissioner of the Indiana Department of Correction); Gregory Server (as chairman of the Indiana Parole Board); Randall P. Gentry (as vice chairman of the Indiana Parole Board); Thor R. Miller, Valerie J. Parker, and William R. Harris (as members of the Indiana Parole Board); and Mia Kelsaw, Damita Vanlandingham, and Susan Feasby (as parole supervisors for the Indiana Parole Board's Fort Wayne District). When possible, we shall refer to the defendants collectively as "the Parole Board."

We reverse and remand.

ISSUES

The following issues are dispositive:

I.     Whether Bleeke waived any right to appeal the imposition of additional parole conditions when he signed a document permitting him to move to Ohio;

II.     Whether the trial court erred in determining as a matter of law that provisions of Indiana Code Section 11-13-3-4(g) were not overbroad;

III.    Whether the trial court erred in determining that the designated evidence supported the imposition of certain additional parole conditions prohibiting Bleeke's association with children;

IV.    Whether the trial court erred in determining as a matter of law that certain other additional parole conditions were neither overbroad nor vague; and

V.    Whether the trial court erred in determining as a matter of law that the Indiana Sex Offender Management and Monitoring Program ("SOMM"), as applied to Bleeke, violates his right to due process.[1]

## FACTS AND PROCEDURAL HISTORY

On January 31, 2005, a jury found Bleeke guilty of residential entry, attempted criminal deviate conduct, and sexual battery for the 2002 entry into an adult female's apartment and the touching of her pubic area in an attempt to digitally penetrate her vagina. The trial court merged the attempted criminal deviate conduct and sexual battery counts and sentenced Bleeke to concurrent sentences of ten years on the attempted criminal deviate conduct conviction and one and one-half years on the residential entry conviction. Bleeke appealed his attempted criminal deviate conduct conviction, and this court affirmed. *See Bleeke v. State*, No. 02A03-0504-CR-196 (Ind. Ct. App. August 29, 2005), *trans. denied*.

Bleeke was incarcerated in the Indiana Department of Correction ("D.O.C.") from January 6, 2005, until March 19, 2008, when he was released to an Allen County community

---

[1] In its "Response in Opposition to Motion for Summary Judgment," the Parole Board questioned whether Bleeke should have named his family as plaintiffs and anyone other than the Parole Board as a defendant. It did not, however, ask the trial court to rule on the matter. Accordingly, the trial court did not rule on the matter, and we have nothing to review.

transition program. On April 24, 2009, after completing the community transition program,

Bleeke was released to mandatory parole, which ends in 2015.

The Parole Board imposed a statutorily-required parole condition pursuant to Indiana

Code section 11-13-3-4(g)(2)(D), which states that the Parole Board shall "prohibit a parolee

who is a sex offender from owning, operating, managing, being employed by, or volunteering

at any attraction designed to be primarily enjoyed by children less than sixteen (16) years of

age."

Indiana Code section 11-13-3-4(b) allows the Parole Board "to adopt, under IC 4-22-

2, additional conditions" that "must be reasonably related to the parolee's successful

reintegration into the community and not unduly restrictive of a fundamental right." Under

this subsection, the Parole Board imposed additional parole conditions listed on standardized

State Form 49108 that limited Bleeke's association with minors, including his own children

and step-children. State Form 49108 provides in part:

> 4.      You shall not touch, photograph (still or moving), correspond with (via
>         letter or e-mail), and/or engage in "small talk" or unnecessary
>         conversation <u>with any child</u>, including your own, either directly or via
>         third party, or attempt to do any of the preceding without written
>         approval in advance by your parole agent, in consultation with your
>         treatment provider. You must never be in any vehicle or any residence
>         <u>with any child</u>, including your own, even if other adult(s) is/are present,
>         without written approval in advance by your parole agent in
>         consultation with your treatment provider. You must report any
>         inadvertent contact with children to your parole agent within twenty-
>         four (24) hours of contact.[2]

---

[2] The trial court noted that the Parole Board agreed that "inadvertent contact" with children must be construed in accordance with *Collins v. State*, 911 N.E.2d 700 (Ind. Ct. App. 2009), *trans. denied, Piercefield v. State*, 877 N.E.2d 1213 (Ind. Ct. App. 2007), *trans. denied,* and *McVey v. State*, 863 N.E.2d 434 (Ind. Ct. App. 2007), *trans. denied*. In these cases, which construe the similar term "incidental contact," the courts held that

4

5.      You must not reside, visit or be within one thousand (1,000) feet of public parks with playgrounds, pools, rides, and/or nature trails, schools, day care centers, public swimming pools, public beaches, theaters, or any other place where children can reasonably be expected to congregate.

17.     You shall not stay overnight with any adult and/or establish an intimate and/or sexual relationship with any adult without prior approval by your parole agent and treatment clinician. You must also report whether the person you are having a relationship with has children under the age of eighteen (18) and/or if children under the age of eighteen (18) reside in the person's home.

19.     You shall not possess any items on your person, in your vehicle, in your place of residence, or as part of your personal effects which attract children or that may be used to coerce children to engage in inappropriate or illegal sexual activities. You will not attempt to persuade, whether by words or actions or both, a child to enter a vehicle, structure, or enclosed area, or to otherwise relocate.

Appellant's App. pp. 22-23 (emphasis added).

Bleeke was permitted to visit and play with his son, K.B., while he was a prisoner in D.O.C.; however, after he was released to parole, his parole agents interpreted his parole conditions to prohibit him from being physically present with his son, speaking to him by phone or contacting him through a third person, or corresponding with him. Parole agents also interpreted the parole conditions to prohibit Bleeke from possessing photographs or videotapes of his son. Parole agents further interpreted the parole conditions to prohibit Bleeke from even being present at the birth of his second son, Z.B., born on July 7, 2009. They also prohibited Bleeke from having contact with Z.B.

_____

such contact does not "mean anything other than touching, photographing (still or moving), corresponding with (via letter or e-mail), and/or engaging in 'small talk' or unnecessary conversation with any child . . . ."

5

Sometime prior to the filing in state court of the complaint for declaratory and injunctive relief that led to this appeal, Bleeke had filed a lawsuit in federal district court challenging some of the same parole conditions that he is challenging in this appeal. Due to procedural issues, the federal district court dismissed most of Bleeke's claims without prejudice; however, it did grant Bleeke's motion for preliminary injunction regarding those conditions that prohibited Bleeke's association with his own children and step-children. *See Bleeke v. Server*, 2010 WL 299148 at *13 (N.D. Ind. January 19, 2010). The federal court held that Bleeke "established that [the Parole Board] had a constitutional obligation to provide some procedural safeguard allowing for an individualized determination as to [Bleeke's] risk to his own children before imposing [Bleeke's] parole conditions." *Id*.

On May 10, 2010, the Parole Board held a special hearing pursuant to the federal court's order. In the hearing, Bleeke presented evidence from his SOMM supervisor, Mary Rose, and the supervisor of his parole agents, Mia Kelsaw, that he posed no risk to children. The Parole Board heard testimony by the SOMM program director, Adam Deming, that the actuarial statistics upon which the program relies for recidivism rates do not measure the likelihood of a sex offender acting out against children. Deming also testified that psychological evaluations do exist which would allow the Parole Board to assess the level of risk that an individual parolee will recommit an offense using dynamic risk factors particular to that individual instead of actuarial statistics. However, Deming testified that no such evaluation of Bleeke had been made and that Deming would rely heavily upon Rose's

evaluation. Even though the Parole Board received no individualized evidence that Bleeke had or would abuse a child, the Board upheld all of the parole conditions formerly imposed upon him, including the conditions that prevented him from associating with his own children or other children.

On May 19, 2010, Bleeke filed in Allen Superior Court the aforementioned complaint for declaratory and injunctive relief. Bleeke amended the motion and complaint on June 14, 2010. In the amended motion and complaint, Bleeke claimed that the Indiana Declaratory Judgment Act, Indiana Code section 34-14-1-1 et seq., "entitles [him] to obtain a declaration of [his] rights and status under the challenged statutes, State Conditions, and conduct of the State." Appellant's App. p. 37. Bleeke further claimed that he was entitled to injunctive relief that prevented the Parole Board from enforcing parole conditions that prevented his association with children.

Among other things, Bleeke alleged that (1) Indiana Code section 35-42-4-11 and Indiana Code section 11-13-3-4(g)(2)(D) denied him procedural due process and were overbroad in their application to him; (2) the Parole Board imposed additional parole conditions that do not accomplish the twin goals of Indiana Code section 11-13-3-4(b), which requires that additional parole conditions imposed must be reasonably related to the parolee's successful reintegration into the community and not unduly restrictive of a fundamental right; (3) the Parole Board imposed other additional parole conditions that are overbroad and/or vague; and (4) D.O.C.'s SOMM Program violated his Fifth Amendment right against compulsion by compelling him to admit guilt in order to complete the assigned program.

7

Appellant's App. pp. 29-46. Bleeke subsequently filed a motion for summary judgment pertaining to each of the issues raised in his complaint.

During the time that the case was pending, Bleeke requested that his parole be transferred to Ohio, where his wife and family were residing. Permission was granted and Bleeke moved to Ohio at some point after the Indiana trial court had entered a preliminary injunction prohibiting the Parole Board from enforcing any parole conditions that blocked Bleeke from associating with his own children and step-children but before the Indiana trial court entered its final injunction and summary judgment order.

On December 19, 2011, the trial court ultimately found that "[i]t was only after a lawsuit filed in federal court and the filing of this case" that the Parole Board "permitted any regular contact between [Bleeke] and his family prior to the issuance of a preliminary injunction by this Court in this case." Appellant's App. p. 24. The trial court noted that the Parole Board did not contest the extension of a preliminary injunction permitting Bleeke to associate with his own children and step-children, and it converted the preliminary injunction to a permanent injunction and enjoined the Parole Board from enforcing conditions 4, 5, 17, and 19 of Indiana State Form 49108 with respect to Bleeke's own children and step-children. The trial court granted summary judgment in favor of the Parole Board and against Bleeke on all other issues raised in Bleeke's motion for summary judgment.[3]

Bleeke now appeals the portions of trial court's order that denied his summary judgment motion and granted summary judgment in favor of the Parole Board. He asks that

8

this court instruct the trial court to enter a permanent injunction against the Parole Board.

## DISCUSSION AND DECISION

## I. WAIVER

Before addressing Bleeke's contentions, we first address the Parole Board's cross-appeal argument that Bleeke waived any right to appeal the conditions of his parole when he signed Ohio's "Conditions of Supervision" document that stated, "I agree to fully participate in, and successfully complete, the following indicated Sanctions/Special Conditions: 1) SEE ATTACHED INDIANA PAROLE CONDITIONS OF SUPERVISION." Appellees' App. pp. 1-2.[4] The Parole Board cites *Harris v. State*, 836 N.E.2d 267, 272-73 (Ind. Ct. App. 2005), *trans. denied*, for the proposition that "a parole agreement is a contract between the prisoner and the State and may be subject to certain conditions imposed at the time of the granting of parole . . . . Accordingly, where conditions have been imposed, the parolee is bound by such conditions." The Parole Board argues that a parole agreement is like a plea agreement, in that a defendant who signs the agreement waives objections to the contents therein.

In the present case, our review of the designated document evinces no signature and no attached list of conditions. From the document, we cannot ascertain exactly what Bleeke is supposedly waiving. Further, we again observe that the transfer to Ohio occurred after the

---

[3] A trial court "may grant summary judgment for any other party upon the issues raised by the motion although no motion for summary judgment is filed by such party." Indiana Trial Rule 56(B).

[4] As noted in our statement of the facts above, Bleeke's wife, children, and step-children reside in Ohio. In order to be near them, Bleeke was required to accede to Ohio-imposed requirements.

9

trial court entered its preliminary injunction but before it ruled on Bleeke's summary judgment motion. It was not until sixteen months after the transfer, a period of time where Bleeke's attorneys engaged in discovery and filed a lengthy summary judgment motion, that the Parole Board first made its waiver argument. These facts do not demonstrate that the Parole Board considered the designated document to be a waiver of Bleeke's rights, for if it had it would surely have informed Bleeke's attorneys before they engaged in time consuming and expensive discovery-related activities. Finally, we conclude that the designated agreement is not similar to a plea agreement, wherein the State is required to advise the defendant of specific rights so that the defendant will know what he is waiving under the agreement. The agreement is, however, similar to an order imposing probation terms. *See Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973) (equating probation to parole). A signature to such an agreement "does not serve as a waiver to challenge any terms on appeal . . . ." *See Piercefield*, 877 N.E.2d at 1218. Thus, although a parolee may be subject to conditions found in a parole agreement, such conditions may be challenged. In short, Bleeke has not waived his right to appeal.

## II. PROPRIETY OF INDIANA CODE SECTIONS 35-42-4-11 AND 11-13-3-4(g)(2)(D)

### A. Indiana Code section 35-42-4-11

Indiana Code section 35-42-4-11 states that a person found to be "a sexually violent predator under IC 35-38-1-7.5" automatically is an "offender against children." Indiana Code section 35-38-1-7.5 provides that a "sexually violent predator" includes a person who, like Bleeke, has been convicted of criminal deviate conduct pursuant to Indiana Code section

10

35-42-4-2. The statute further provides that an "offender against children" may not "knowingly or intentionally" reside within one thousand feet of schools, youth program centers, or a public park." I.C. § 35-42-4-11(c). Bleeke contends that Indiana Code section 35-42-4-11, in classifying him as an "offender against children" and restricting his residence without notice or a hearing, violates his right to procedural due process.

Our examination of the history of Indiana Code section 35-42-4-11 discloses that it does not apply to offenders who committed offenses before June 30, 2006. Accordingly, the statute, including its classification and its residence restriction provision, does not apply to Bleeke, who committed sexual deviate conduct in 2002.

### B. Indiana Code section 11-13-3-4(g)(2)(D)

As we note above, Indiana Code section 11-13-3-4(g)(2)(D) provides that the Parole Board shall "prohibit a parolee who is a sex offender from owning, operating, managing, being employed by, or volunteering at any attraction designed to be primarily enjoyed by children less than sixteen (16) years of age."[5] Bleeke contends that this provision deprives him of his right to procedural due process by preventing him from any association with minors "even though all of the evidence before the Parole Board indicates [he] does not pose a risk to minors." Appellant's Br. p. 43. In addition, Bleeke contends that the provision is overbroad.

---

[5] Indiana Code section 11-13-3-4(g)(2)(B) provides that the Parole Board shall impose a required parole condition that "prohibit[s] a parolee who is a sex offender from residing within one thousand (1,000) feet of school property (as defined in IC 35-31.5-2-285) for the period of parole, unless the sex offender obtains written approval from the parole board." For a reason not evident in the record, the Parole Board did not impose this condition, but instead imposed the more restrictive Additional Parole Condition No. 5. We address the propriety of Additional Parole Condition No. 5 in our discussion of Issue 3.

11

Bleeke is appealing from the trial court's denial of his motion for summary judgment and grant of summary judgment for the Parole Board. Summary judgment is appropriate if there is no genuine issue of material fact and a party is entitled to judgment as a matter of law. *City of Terre Haute v. Pairsh*, 883 N.E.2d 1203, 1206 (Ind. Ct. App. 2008), *trans. denied*. When reviewing an entry of summary judgment, we stand in the shoes of the trial court. *Koppin v. Strode*, 761 N.E.2d 455, 460 (Ind. Ct. App. 2002), *trans. denied.* The moving party bears the burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Boston v. GYN, Ltd.*, 785 N.E.2d 1187, 1190 (Ind. Ct. App. 2003), *trans. denied.* We review only the designated evidentiary material in the record, construing that evidence liberally in favor of the nonmoving party so as not to deny that party its day in court. *Myers v. Irving Materials*, 780 N.E.2d 1226, 1228 (Ind. Ct. App. 2003).

Questions of statutory construction are particularly amenable to resolution by summary judgment, as they are pure questions of law. *Koppin*, 761 N.E.2d at 460. We review questions of law de novo and owe no deference to the trial court's legal conclusions. *Id*.

Procedural due process under the Fourteenth Amendment of the United States Constitution is implicated where an individual is deprived of life, liberty, or property without due process of law. The Supreme Court has adopted a two-step analysis to examine whether an individual's procedural due process rights have been violated. The first question "asks whether there exists a liberty . . . interest which has been interfered with by the State; the

12

second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

Federal courts have recognized that prisoners or parolees have a liberty interest under the Due Process Clause in freedom from the stigmatization that occurs through classification and attendant conditions imposed upon a person who was not convicted of an offense within the classification. *See Vitek v. Jones*, 445 U.S. 480, 492-93 (1980) (holding that a prisoner is entitled to procedural due process prior to being transferred to a mental hospital); *Meza v. Livingston*, 607 F.3d 392, 395 (5th Cir. 2010) (holding that a parolee who has not been convicted of a sex offense is entitled to procedural due process prior to imposition of sex offender conditions); *Coleman v. Dretke*, 395 F.3d 216, 222 (5th Cir. 2004) (holding that a parolee who has not been convicted of a sex offense may not be burdened with sex offender registration and therapy without due process); *Kirby v. Siegelman*, 195 F.3d 1285, 1292 (11th Cir. 1999) (holding that classification as a sex offender implicates a liberty interest under the due process clause); *Neal v. Shimoda*, 131 F.3d 818, 829 (9th Cir. 1997) (holding that a prisoner must be afforded procedural due process before suffering the "stigmatizing consequences" of being labeled a sex offender). Under the four latter cases, the courts held that the prisoner/parolee who had not been convicted of a sex offense had a liberty interest in not being branded a sex offender. *See Kirby*, 195 F.3d at 1291.

Here, Indiana Code section 11-13-3-4(g)(2)(D), in effect, classifies Bleeke as a child molester or an offender against children by imposing a condition that severely limits his

association with children. Of course, the State has the responsibility of protecting the life, liberty, and safety of the public, and we presume that the condition is designed to provide such protection by preventing parolees from grooming and preying upon minors. However, perhaps the only combination of classification and conditions more stigmatizing than a "sex offender" label (which is correctly applied to Bleeke based on his conviction) is the combination of classification and related parole conditions placed on a child molester or offender against children (which is not based upon a conviction). Under the above-cited cases, the classification of Bleeke through the imposition of Indiana Code section 11-13-3-4(g)(2)(D) implicates a liberty interest, and the State must provide procedural due process protections.

Our identification of a liberty interest does not, of course, complete the due process analysis. We must now determine what type of process is required and whether Bleeke received that process. In *Meza*, the court determined that minimum process includes the following:

> (1) written notice that [offender against children] conditions may be imposed as a condition of his mandatory supervision, (2) disclosure of the evidence being presented against [Bleeke] to enable him to marshal the facts asserted against him and prepare a defense, (3) a hearing at which [Bleeke] is permitted to be heard in person, present documentary evidence, and call witnesses, (4) an impartial decision maker, and (5) a written statement by the factfinder as to the evidence relied on and the reasons it attached [offender against children] conditions to his mandatory supervision.

607 F.3d at 409 (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974)).

In the case before us, Bleeke, through his persistence, has been afforded the

14

aforementioned process in the trial court. In support of his motion for summary judgment, he

designated the following evidence:

• An admission by State witness Dr. Adam Deming that the actuarial statistics used by SOMM do not indicate whether a sex offender is likely to act out against a child. Appellant's App., recording of Parole Board hearing.

• An averment by Mary Rose, Bleeke's counselor for the SOMM program, that "[s]ince the beginning of his treatment, Mr. Bleeke has given no reason to believe he is at risk to molest a child." Appellant's App. p. 318.

• An averment by Rose that Bleeke was twice given polygraph examinations, and the polygraph report acknowledges that there were no "significant responses to the relevant questions asked on the examination." *Id*.

• An averment by Rose that "Mr. Bleeke has not said or done anything that leads me to believe that he poses a risk to children, including his own children." *Id*.

• An averment by Mia Kelsaw, the supervisor of Bleeke's parole officers and member of his "containment team," that she had no evidence that Bleeke poses a risk to his children "or to anyone." Appellant's App., recording of Parole Board hearing.

The Parole Board responded by citing a study describing "cross-over" offenders. The

study has not been made a part of the record on appeal, but its purported contents were

examined and found wanting by the court in Bleeke's federal action. The court stated:

> Turning to . . . whether a rational connection exists between the regulation and the governmental interest advanced as to its justification . . . the state in this case attempted to prove this through expert testimony. [The Parole Board's] expert, psychotherapist Adam [Deming], testified as to the statistical tendencies of adult sex offenders. He focused his testimony on a study showing that 50% to 70% of repeat sex offenders could be considered "cross-over" offenders, reaching across category types including age and gender. According to [Deming], perhaps counter-intuitively, adult sex offenders are more likely to be "cross-over" offenders than pedophiles and other sexual abusers of children. In other words, just because [Bleeke] was convicted of a sexual offense against an adult does not mean that concerns over recidivism should not include his targeting of children in the future. While this testimony shows that [Bleeke's] parole condition has some basis in rationality, the

15

connection is far from overwhelming. For one thing, the findings cited by [Deming] were based on a study of only 500 individuals. *More significantly, even assuming the study was completely reliable, it still leaves a sizeable number of adult sex offenders who would never look to children as targets of repeat misconduct . . . .*

*Bleeke v. Server*, 2010 WL 299148 at \*7 (emphasis added).

An overbreadth challenge asserts that the statute is not drawn in sufficiently narrow terms and foreseeably prohibits legitimate conduct. *Van Sant v. State*, 523 N.E.2d 229, 233 (Ind. Ct. App. 1988). Stated differently, an overbreadth challenge evaluates a statute based "not upon the [party's] conduct, but rather upon legitimate conduct which might foreseeably be prohibited by a statute which is not drawn in sufficiently narrow terms." *Andrews v. State*, 505 N.E.2d 815, 822-23 (Ind. Ct. App. 1987).

Here, the Parole Board's witnesses provided evidence that Bleeke is not among those sex offenders who "cross-over" and become a danger to children. Indiana Code section 13-11-3-4(g)(2)(D), which limits legitimate conduct in the form of both foreseeable employment and association, is overbroad as applied to Bleeke.

### III. VALIDITY OF THE ADDITIONAL PAROLE CONDITIONS UNDER INDIANA CODE SECTION 11-13-3-4(b)

Bleeke contends that the trial court erred in not finding that the Parole Board failed to comply with Indiana Code section 11-13-3-4(b), which provides, in pertinent part, that additional probation conditions "must be reasonably related to the parolee's successful reintegration into the community and not unduly restrictive of a fundamental right." Bleeke also contends that the Parole Board's automatic imposition of Additional Parole Conditions

16

4, 5, 17, and 19 of Form 49108, without individualized analysis of whether such conditions are reasonably related to his successful reintegration into the community, violates the clear wording of the statute. Bleeke argues that the Parole Board's failure to make such a determination "renders the act of imposing those additional conditions on [Bleeke] an act outside of its statutory authority and thus *ultra vires*." Appellant's Br. p. 30 (citing *Planned Parenthood of Ind. v. Carter*, 854 N.E.2d 853, 864 (Ind. Ct. App. 2006) (holding that "any act of an agency in excess of its power is *ultra vires* and void"); *Vehslage v. Rose Acre Farms, Inc.*, 474 N.E.2d 1029, 1033 (Ind. Ct. App. 1985) (holding that "[a]dministrative boards, agencies, and officers have no common law or inherent powers, but only such authority as is conferred upon them by statutory enactment")).

The Parole Board replies that the additional conditions "are solely for the State to minimize risks to children. Sexual predators prey upon those to whom they have access." Appellees' Br. p. 25. The Parole Board cites *Carswell v. State*, 721 N.E.2d 1255, 1259 (Ind. Ct. App. 1999), which involves restrictions on a child molester, not a sex offender. The Parole Board also cites other cases, all involving child molesters. These cases are not relevant to the issue of whether the Parole Board complied with the requirement of Indiana Code section 11-13-3-4(b) that the Parole Board's additional conditions be reasonably related to Bleeke's successful reintegration into the community and that they not unduly restrict his constitutional rights. Indeed, the Parole Board's response illustrates its apparent position that it need not conduct an individualized assessment under Indiana Code section 11-13-3-4(b).

There is no designated evidence that supports the imposition of the additional

17

conditions. The sum total of the Parole Board's argument is that all sex offenders, no matter what offense they committed, no matter what circumstances surrounded commission of the offense, and no matter whether they are a danger to children, must be treated as child molesters and be controlled by parole conditions that are designed to govern child molesters. Accordingly, as Bleeke is being reintegrated into the community through parole, he cannot attend his children's activities, family reunions, church services, athletic events, or any other functions where he might associate with minors. As noted in our discussion of Issue 2, all of the designated evidence demonstrates that Bleeke presents no threat to minors. It is clear that the Parole Board failed to make a determination under Indiana Code section 11-13-2-4(b) that the additional conditions imposed on Bleeke are "reasonably related to the parolee's successful reintegration into the community." Thus, the Parole Board exceeded its statutory powers, and its acts are void. The trial court should have granted summary judgment for Bleeke on this issue.[6]

## IV. VALIDITY OF OTHER ADDITIONAL PAROLE CONDITIONS

Bleeke contends that other certain additional parole conditions are impermissibly overbroad or vague. In *Collins v. State*, 911 N.E.2d 700, 713 (Ind. Ct. App. 2009), *trans. denied*, we held that "[a] probationer has a due process right to conditions of supervised

---

[6] To be sure, the Parole Board has an interest in protecting the public since parolees have unsupervised contact with the community. *See Felce v. Fiedler*, 974 F.2d 1484, 1495 (7th Cir. 1992). This interest is offset by the statutory requirement that the Parole Board reintegrate parolees into society. Furthermore, as the court found in Bleeke's federal case, while freedom of association is among the constitutional rights least compatible with incarceration, "the same cannot be said of parole." *Bleeke v. Server*, 2010 WL 299148, at * 9 (N.D. Ind. 2010). "A parolee's 'condition is very different from that of confinement in a prison,' precisely because of his interest in pursuing the 'enduring attachments of normal life.'" *Id*. (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)).

release that are sufficiently clear to inform him of what conduct will result in his being returned to prison." We see no reason that a parolee should be deprived of such a right. *See Harris*, 836 N.E.2d at 277 (holding that "a parolee . . . has a due process right to 'conditions of supervised release that are sufficiently clear to inform him of what conduct will result in his being returned to prison'") (quoting *Smith v. State*, 779 N.E.2d 111, 118 (Ind. Ct. App. 2002), *trans. denied*).

### A. Additional Parole Condition 8

This condition provides in pertinent part that Bleeke "shall not visit . . . businesses which sell sexual devices or aids" and that he "shall not possess personal contact materials (for example, magazines or papers) that contain information about persons who are desiring to have personal relationships of any kind with others . . . ." Appellant's App. p. 254. In *Collins*, we examined a probation condition with nearly identical language and concluded that the condition "places an unfairly broad prohibition on Collins's ability to visit businesses which sell 'sexual devices or aids,' which could extend to drug stores, and possessing materials which might contain information about persons seeking 'personal relationships of any kind,' which could extend to local newspapers advertising roommate services." 911 N.E.2d at 714.

### B. Additional Probation Condition 15

This condition states, "You shall refrain from 'cruising activity,' frequenting areas where potential victims can be encountered." Appellant's App. p. 255. In *Collins*, the State conceded and we held that the exact language was impermissibly vague because it provided

19

"no predictable standard for identifying forbidden places." 911 N.E.2d at 713.

## C. Additional Probation Condition 17

This condition provides in relevant part that Bleeke "shall not . . . establish an intimate and/or sexual relationship with any adult without prior approval by your parole agent and treatment clinician." Appellant's App. p. 255. Bleeke compares this additional condition to the probation condition considered in *Collins*, wherein the probationer was required to notify his probation officer if he established a "dating, intimate, and/or sexual relationship." 911 N.E.2d at 713. We noted that the term "dating relationship" was not sufficiently clear to inform the defendant of the prohibited or regulated conduct. *Id*. (citing *McVey,* 863 N.E.2d at 448-49). As the *McVey* court observed, "dating" could be interpreted as requiring the probationer to report "the most mundane activities as going out for coffee with a friend," which would impose an unreasonable burden upon the defendant, or it could be interpreted as limited to "intimate occasions and sexual contact," thereby rendering the "dating" language superfluous. *Id*. Because of the lack of clarity with respect to the term "dating," we concluded that the term was impermissibly vague. *See Collins,* 911 N.E.2d at 713; *McVey*, 863 N.E.2d at 449.

Bleeke argues that the term "intimate" is even more ambiguous than the term "dating" because it can refer to a relationship involving either physical or emotional closeness. He further argues that the condition is not clear as to when Bleeke is "establishing" an intimate relationship or what relationships are deemed "intimate." Appellant's Reply Br. p. 30.

The word "intimate," when used as an adjective, means "marked by close

acquaintance, association, or familiarity" or "very personal." The American Heritage Dictionary 727 (4th ed. 2002). When used as a noun, the word describes "a close friend or confidant." *Id.*

We conclude that the term "intimate," as used in the condition, is vague. An intimate relationship is one where Bleeke would spend a significant amount of time with the other person and would during that time confide in that person as a close acquaintance. "Significant," "confide," and "close," may be capable of being measured, but there is no indication of how such measurement would occur and how Bleeke would know that he has crossed the line from a "casual" to an "intimate" relationship.

### D. Additional Probation Condition 19

This condition provides as follows:

> You shall not possess any items on your person, in your vehicle, in your place of residence, or as part of your personal effects which attract children or that may be used to coerce children to engage in inappropriate or illegal sexual activities. You will not attempt to persuade, whether by words or actions or both, a child to enter a vehicle, structure, or enclosed area, or to otherwise relocate.

Appellant's App. p. 255. In *Collins*, we evaluated an almost identical probation condition and found it wanting. 911 N.E.2d at 714. We noted that prohibited items under this condition could "range from kites and balloons to chocolate bars, and prohibited conduct could include such potentially innocuous activities as standing on one's head or juggling . . . ." *Id. See also Harris*, 836 N.E.2d at 277 (holding that the condition does not "provide standards that would give a parolee of ordinary intelligence an opportunity to know what is

21

prohibited").

Based upon the forgoing, we hold as a matter of law that Additional Parole Condition 8 is overbroad and Additional Parole Conditions 15, 17, and 19 are vague.[7]

### V. CONSTITUTIONALITY OF THE SOMM PROGRAM

Bleeke contends that the SOMM Program is unconstitutional because it forces him to confess guilt, disclose all other sexual behaviors, give written consent to disclosure of the confession and/or disclosure, and submit to a polygraph on these subjects. His refusal to admit to an act that he denied in trial testimony has resulted in his expulsion from one provider's program and puts him at risk of revocation of parole.

The Fifth Amendment, applicable to the states through the Fourteenth Amendment, provides that no person "shall be compelled in any criminal case to be witness against himself." In order for the privilege to apply, two distinct elements must be present: compulsion and incrimination. *Hiibel v. Sixth Judicial Dist. Ct. of Nev.*, 542 U.S. 177, 189 (2004).

The compulsion element of the privilege against self-incrimination is present when the state attaches sufficiently adverse consequences to a refusal to surrender the privilege. *Leftkowitz v. Cunningham*, 431 U.S. 801, 805 (1977). The incrimination element refers to the fact that a surrender of the privilege "might be dangerous because injurious disclosure could result." *Hoffman v. United States*, 341 U.S. 479, 486-87 (1951). Although the danger of incrimination must be real and appreciable, and not simply imaginary and unsubstantial,

22

the inquiry into whether a statement is incriminating should not consider the actual likelihood of prosecution. *Resnover v. Pearson*, 965 F.2d 1453, 1462 (7th Cir. 1992) (holding that "We cannot agree that a witness' constitutional privilege against self-incrimination depends upon a judge's prediction of the likelihood of prosecution"). "[I]t is only where there is but a fanciful possibility of prosecution that a claim of Fifth Amendment privilege is not well taken." *In re Folding Carton Antitrust Litig.*, 609 F.2d 867, 871 (7th Cir. 1979).

Bleeke cites *Gilfillen v. State*, 582 N.E.2d 821 (Ind. 1991), in support of his argument. In *Gilfillen*, the defendant refused to admit guilt during a required probationary treatment program after he served a prison term for child molesting. Because of his refusal, his probation was revoked, and this Court affirmed. Our Supreme Court stated:

> Gilfillen regularly attended the ordered counseling sessions. Also, he did not plead guilty and, therefore, has not admitted to having any child molesting problem. In fact, he continues to protest his innocence. Under these circumstances, requiring Gilfillen to admit he has a problem with child molesting or face revocation of probation is tantamount to requiring that he admit that he is guilty of the crimes charged. Clearly, this is unacceptable.

> We recognize that probation is a matter of grace, and whether probation is granted is within the trial court's discretion. Reasonable conditions on probation may be imposed on a defendant, but thought control is not one of them. Thus, in a circumstance such as this, where the defendant has not pled guilty but was instead convicted while denying guilt, the trial court may not insist on an admission of guilt as a condition of probation or use a continued denial of guilt as the basis for revocation.

*Id*. at 824 (internal citations omitted). In *State v. Moore*, 909 N.E.2d 1053, 1056 n. 1 (Ind. Ct. App. 2010), *trans. denied*, the court noted that although *Gilfillen* does not specifically

---

[7] Given our decisions on Issues III and IV, we need not address Bleeke's argument that the additional parole conditions should have been promulgated pursuant to Indiana Code section 4-22-2.

refer to it, the case "was grounded on the Fifth Amendment."

The Parole Board does not refer to either *Gilfillen* or *Moore* in its brief. Instead, it cites to a series of federal cases that appear to hold a narrower view of the Fifth Amendment than that held by Indiana courts. Most, if not all, of the cases cited by the Parole Board involve 42 U.S.C. section 1983 actions, and are based on the holding in *Chavez v. Martinez,* 538 U.S. 760 (2003), that a party may not sue for money damages under the federal statute for violation of the Fifth Amendment unless the compelled statement has been used against him in a criminal case. Accordingly, the narrow view expressed in these cases arguably does not apply to non-section 1983 actions. Certainly, the cases cited by the Parole Board do not address our Supreme Court's *Gilfillen* holding.

The upshot in this case is that the potential for revocation of parole forces Bleeke to give up his Fifth Amendment privilege or possibly return to prison. And although the five-year statute of limitation for perjury has expired, Bleeke is still subject to the possible use by law enforcement of any other incriminating statements.[8] The SOMM program's requirements violate the Fifth Amendment.

### CONCLUSION

The trial court erred in granting summary judgment in favor of the Parole Board. Further, it erred in denying Bleeke's motion for summary judgment. We reverse and remand

---

[8] The Parole Board argues that there are now "denier" groups where Bleeke can receive treatment without making self-incriminating statements. From statements made at oral argument and by Dr. Deming at the hearing before the parole board, it is not clear whether these groups will provide a safe haven from self-incrimination, or whether they are a stop-gap measure designed to treat deniers while D.O.C. and the Parole Board determine whether to revoke parole. The Parole Board also maintains that lack of funding has stopped

with instructions that the trial court: (1) vacate its order granting summary judgment for the Parole Board and denying Bleeke's motion for summary judgment; (2) enter an order granting Bleeke's motion for summary judgment; (3) enter an order enjoining the Parole Board from enforcing any conditions premised on the fiction that Bleeke is a danger to minors; (4) enter an order enjoining the Parole Board from enforcing additional parole conditions 8, 15, 17, and 19 against Bleeke; and (5) enter an order enjoining the Parole Board from requiring Bleeke to incriminate himself as part of the SOMM program.

Reversed and remanded.

FRIEDLANDER, J., and BROWN, J., concur.

---

its reporting of compelled statements to law enforcement officials. It is not clear whether this lack of funding will continue and whether reporting will again occur.